EQUITABLE SURETY COMPANY *v.* BANK OF HAZEN.

Appeal from Prairie Chancery Court; *John M. Elliott,* Chancellor.

Original opinion delivered December 20, 1915, and reported at page 422 in this volume of the Reports.

HART, J., (dissenting). The contract between the parties warrants that the accounts of the cashier will be examined and the cash and other securities claimed to be on hand verified once every three months. At the time the cashier absconded in February, 1914, he was short something like $19,000. Any reasonable inspection and verification of his accounts would have disclosed his embezzlement. It may be that the examinations made by the officers of the bank were conducted in good faith, but the method pursued would never show the true condition of the bank or of the cashier's account. Such an examination as was made was a vain and useless thing, so far as the surety company was concerned. It needs no argument to show that the examination made by the officers of the bank did not disclose the true state of the cashier's account. The criminally loose methods of the cashier would have been exposed long before if a practical examination of his accounts had been made. The Exchange National Bank, of Little Rock, was the principal depository and correspondent of the Bank of Hazen. The two banks were

situated near each other and exchanged monthly statements. An examination of the monthly statement of the Exchange National Bank would have disclosed the shortage at any time. Such an examination could have been made by any person with ordinary business experience. It did not require the help of an expert. That the examination of the monthly statement of the correspondent bank was a practical and common sense method of verifying the cashier's accounts was recognized by us in the case of *United States Fidelity & Guaranty Co.* v. *Bank of Batesville,* 87 Ark. 348. There, as here, the bank sued a surety company to recover an amount embezzled by the cashier, and there, as here, the state of the accounts was the subject of the investigation. There the cashier was entrusted with money to buy certain time checks and deposited some of it in another bank which exchanged statements with the plaintiff's bank, and we said that a comparison of the monthly statements received by the plaintiff bank from is correspondent would have disclosed the true state of the cashier's accounts. So, here, the cashier was entrusted with the moneys of the plaintiff bank. As above stated, the Exchange National Bank was its principal correspondent, and kept the larger part of its funds. The officers of the bank could never know the true state of the accounts of the cashier unless an examination was made of the monthly statements of the Exchange National Bank. Otherwise, they would have to take the cashier's own statement of his account. They could never know how much money of the bank was on deposit with the Exchange National Bank in Little Rock except by taking the cashier's statement of it, or by an examination of the statements of the Exchange National Bank. I think the account of the cashier included the amount of money of the bank that was on hand in the Exchange National Bank, as well as that in the home bank, and that a verification of his account could only be made by examining the monthly statements of the Exchange National Bank. Then, too, the president of the bank stated, referring to the cashier, "His accounts were last examined on the 1st day of February, 1912, and found correct in every re-

spect.'' The president was not then outlining a future course of action which the bank would pursue. He was speaking of past occurrences and existing facts. His statement was a warranty.

The undisputed evidence shows that on February 1, 1912, the cashier was a defaulter in the sum of a little over $1,500. His shortage at that time could have been readily discovered by an examination of the monthly statements of the Exchange National Bank. The statement was made by the president some time in March, and an examination of the last monthly statement of the Exchange National Bank would have readily disclosed the shortage.

It seems to me that we held in the *Bank of Batesville* case that an examination of the monthly statements of other banks was a common sense and practical way of verifying cashier's accounts; and I do not see any good reason for departing from that rule in this case.

As above indicated, such a course does not require an expert, but could be done by any one of ordinary business experience.